OPINION OF THE COURT
Bellacosa, J.
The parties are private landowners locked in a dispute over rights with respect to boat docks abutting a parcel of land fronting on Lake George. Defendants-appellants Drakes, owners of one lot, trace their rights to a 1981 deed containing an express grant of an easement to construct a dock. Plaintiffs Dowds trace their rights to a 1982 deed in which they reserved the right to construct four docks to be used in conjunction with their four lots. We conclude that the expressly deeded easement right of the Drakes has not terminated and that they have not consented to or acquiesced in any change in the location of their existing dock. The Dowds’ attempt by this declaratory judgment action to assert priority, or to accommodate their reserved rights, by demolishing or relocating the Drakes’ dock must fail as inconsistent with the expressly deeded easement in the Drakes’ chain of title, which can be traced back to the Dowds as grantors. We therefore reverse the order of the Appellate Division.
In 1969, the Dowds acquired a large parcel, bordering on Lake George. In 1974, they subdivided it into 13 lots and a common area fronting on the lake, and proceeded to sell a majority of the individual lots. The Maywalds, the Drakes’ predecessors in title, purchased a lot from the Dowds in 1981. The Maywalds’ deed contained language granting them an easement in common with the other lot owners to use the common area, which included the lakeshore frontage, for "bathing and recreational purposes”. Their deed also expressly granted them an easement to construct a 20-foot-long dock from the common area into Lake George, "at a point designated by the [Dowds].” A dock was subsequently constructed on the common area for the Maywalds’ use, with the Dowds’ knowledge and consent.
*472 By early 1982, the Dowds had conveyed 9 of the 13 subdivided lots to various defendants or their predecessors in title, retaining ownership of four lots and the common area. Every deed from the Dowds to the lot owners contained an express easement to use the common area. Only the Maywalds’ deed also contained an express easement to build a dock for personal use. The Dowds nevertheless allowed the other lot owners to construct docks on the common area or to use existing docks.
The lot owners, including the Dowds, formed defendant Westover Homeowners’ Association, Inc. in 1982. By deed recorded September 8, 1982, the Dowds conveyed their interest in the common area to the Association. All easements which the Dowds had already conveyed to the individual lot owners were excepted from the conveyance. The Dowds also reserved the right to construct docks on the common area for four boats (one for each of the lots they retained) "at a suitable location approved by [the Association],” provided that the location chosen "shall not * * * unreasonably interfere with the common use of the existing beach and swimming area.” The Association later conveyed equal interests in the common area to the individual lot owners.
In 1984, a dispute arose between the Dowds and the lot owners concerning the location of the additional docks the Dowds wished to build. Rather than seeking a variance, the Dowds brought this action pursuant to RPAPL article 15 seeking a judgment declaring their right to construct three docks — they had sold one lot and its corresponding dock right in the interim — even if that required demolishing or reconfiguring the existing docks. The Dowds, in effect, claimed superiority or priority among the various dock rights. The Drakes acquired the Maywalds’ lot, including their express dock easement with the existing dock, just prior to commencement of the Dowds’ lawsuit.
Trial testimony established that at the time that the Dowds conveyed the common area to the Association, the configuration of the nine existing docks did not comply with Lake George Park Commission Dock Regulations. Construction of additional docks would have required either a variance or demolition and reconfiguration of the existing docks. County Court, therefore, concluded that the defendant lot owners "constructively acquiesced” to realignment of the existing docks by accepting the deed to the common area. That court *473 declared that the Dowds had rights in accordance with a specific configuration of 13 docks which had been introduced in evidence as a diagram at trial. The expenses of obtaining a permit, demolishing the existing docks and constructing new docks were to be allocated pro rata among the parties who would be using the docks.
Only the Drakes appealed to the Appellate Division, which held that the Drakes had the "same dock rights as * * * all other purchasers of lots, at unspecified locations.” (168 AD2d 763, 766.) The court concluded that the Drakes’ 1985 purchase of the Maywalds’ lot, dock and dock easement, three years after the Dowds had deeded the common area to the Association and established their own dock rights, was "akin to their acquiescence and should be deemed a consent to any reasonable change in dock locations necessary to accommodate the dock rights of the other 12 lots and the common usage of the community area.” (168 AD2d, at 767.) This Court granted leave to appeal to the Drakes.
We note at the outset that the Dowds’ rights with respect to the individual defendants were declared at trial. Inasmuch as County Court’s adjudication was not appealed by anyone except the Drakes, it has been established that the Dowds have the right to demolish and reconfigure the docks being used by all defendants except the Drakes. The only issue before us is the Dowds’ right to relocate or realign the Drakes’ existing dock.
Easements by express grant are construed to give effect to the parties’ intent, as manifested by the language of the grant (2 Warren’s Weed, New York Law of Real Property, Easements, §§ 3.02, 17.03 [4th ed]). The deed from the Dowds to the Maywalds contained an easement by express grant to build a dock at an uncertain location, specifically, "at a point [to be] designated by the [Dowds]”. It did not give the Dowds, and they did not reserve, any subsequent right to relocate the dock (compare, Van Laak v Malone, 92 AD2d 964; 2 Warren’s Weed, op. cit, Easements, §§3.02, 17.03). Thus, once that easement was located and a dock was erected in the common area with the Dowds’ knowledge and consent, the location of that dock became fixed and certain and could not be changed without the consent of the Maywalds or their successors in interest, the Drakes (Onthank v Lake Shore & Mich. S. R. R. Co., 71 NY 194, 198; Evangelical Lutheran St. John’s Orphan Home v Buffalo Hydraulic Assn., 64 NY 561, 564; 2 Warren’s *474 Weed, op. cit., Easements, § 17.02). Alternatively, if the expressly granted easement rights of the Maywalds/Drakes have terminated by abandonment, conveyance, condemnation or adverse possession, the location of their dock is subject to change (Gerbig v Zumpano, 7 NY2d 327, 330).
We find no basis upon which to conclude that the Drakes or the Maywalds ever consented to a change in their dock location or that their easement terminated. The legal record contains no proof of abandonment, conveyance, condemnation or adverse possession that would result in termination. Nor is there any proof of actual consent in fact or any support for the lower courts’ findings of "constructive acquiescence” or "deemed” consent.
The Maywalds’ acceptance, as members of the Association, of the deed to the common area at a time when the existing dock configuration did not comply with local regulations does not demonstrate their unequivocal intent to permanently relinquish their rights to and interest in the express dock easement in their own deed (see, Gerbig v Zumpano, supra, at 331). The circumstances surrounding the Dowds’ conveyance to the Association also cannot serve as a basis for attributing to the Maywalds a legal consent to relocation of their dock. The recorded deed conveying the common area to the Association explicitly reserved all easements the Dowds had previously conveyed to the lot owners, thus including the express dock easement granted to the Maywalds. It is undisputed that the Maywalds’ deed was recorded before the Dowds’ 1982 reservation of rights. Thus, everyone, including the other lot owners, was on notice of the Maywalds’ prior and unique dock easement (Real Property Law § 291). That reservation language could reasonably have been interpreted by the Maywalds, the Drakes and the other lot owners as an assurance that the Maywald/Drake dock, if none other, would not be relocated to accommodate the Dowds’ later reserved rights.
Moreover, although the Maywalds may have been aware that the 1982 dock configuration did not comply with applicable regulations, demolition and reconfiguration was not the only available option. The Dowds or the lot owners, or both, could have applied for a variance, which would have obviated the need to demolish the Drakes’ existing dock or those of the other owners. Thus, knowledge of the regulations, imputed or actual, does not have the inexorable legal significance and consequence attributed to it by County Court.
*475 Contrary to the Appellate Division’s holding, the fact that the Drakes purchased the Maywalds’ lot and dock easement after the Dowds reserved their rights does not operate to extinguish the express easement in the Drakes’ chain of title. To hold otherwise would impermissibly override the certainty which inheres in, and is necessary to, a reliable system of real property conveyancing.
In sum, the express dock easement in the Drakes’ chain of title has not been terminated or altered. There is no factual or legal consent evident in this record. If the 13-dock configuration which County Court approved would require demolition or relocation of the Drakes’ dock, that solution to the controversy would violate the Drakes’ recorded and expressly protected rights.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Warren County Court for an appropriate declaration in accordance with this opinion.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, with costs, and case remitted to Warren County Court for further proceedings in accordance with the opinion herein.